Dorman, J.
The question raised in this case respecting the right of a prisoner to plead or not, upon his arraignment in the County court, when, under the statute, he makes a demand to have a trial in the Circuit court, and what is meant by arraignment in that clause of the statute, have, at this term, been already determined by this court, in its decision in the case of Whitehead v. The Commonwealth.
The first ground of error alleged in the petition of the prisoner, is, that after the evidence was closed and the jury had retired to consult upon their verdict, differing as to the testimony of one of the witnesses, they came into court, requested to hear again the testimony of this witness, the court permitted a portion of the testimony of the witness, as taken down, to be read in the absence of the prisoner as well as the witness. Erom the record it appears, that sometime during the reading of the notes of this testimony, the prisoner was brought into court; and also, chat the witness, being afterwards present, was re-examined, by consent of all parties.
How much of the testimony as taken down was read, in the absence of the prisoner, does not appear. Erom the way it is mentioned, it must be presumed, that a considerable portion of it was thus read to the jury in the prisoner’s absence. Ho principle is sup *664 posed to be better settled, and, in all criminal trials of the grade of felony, more rigidly adhered to than that all such trials, the prisoner has a right to be present *n eyery stage from the arraignment to the rendition ver<^°k ^'is held to be a right of which he cannot be deprived, and which he cannot waive. So imperative is the rule of law, that no part of the trial can proceed without him. If witnesses are examined, he must have an opportunity to hear and know what they say. If notes of the testimony are, afterwards, read to the jury, it is no less his privilege and right to hear the reading of it. How much influence the reading of the testimony in this case may have had upon the minds of the jury, it is impossible to determine. It is not, however, a question, whether the effect of the reading of the testimony, in his absence, was unfavorable to him, or otherwise, or how far his case was affected by it, if at all. Under the established and safe practice in criminal proceedings, the reading of this testimony was irregular and in violation of the rights of the prisoner, who must be present at every part of the proceedings. In his absence, there can be no trial. The law provides for his presence. And every step taken in his absence is void and vitiates the whole proceeding. On this point all authorities agree.' And no question can be raised, as to the extent of the injury done to the prisoner, or whether any injury resulted from his not being present. Circumstances might occur, were the practice to obtain, where great wrong would result. ( The possibility of wrong is sufficient to secure in all trials, involving life and liberty, the rigid enforcement of the law.
Bishop on Criminal procedure, § 687, says, “ The prisoner cannot be deprived of his right to be present at all stages of the trial.” § 688, he states, “ In a case of felony or treason, the prisoner must be present du *665 ring the whole of the trial, including the giving in of the evidence and the rendition of the verdict.” The reading the testimony of a witness, at the request of the jury, who differed about it, constituted a part of the trial, “ the giving in of the evidence.” It may have been the part of the trial which determined the character of the verdict, and the accused had a right to be present and know all that was said or done on his trial.
In Andrews v. The State, 2 Sneed’s R. 550, the court declares, “ In criminal cases of the grade of felony, where the life or liberty of the accused is in peril, he has the right to be present, and must be present during the trial and until the final judgment.” This decision was placed in part upon the bill of rights in Tennessee. But it is questionable, whether, in criminal trials under the general law regulating such trials, a party accused has not every privilege granted by that bill of rights. See, also, Witt’s case, 5 Coldw. R. 11; People v. Perkins, 1 Wend. R. 91; Rex v. Streek, 2 Carr & Payne’s R. 418.
In Wade v. The State of Georgia, 12 Georgia R. 25, it is declared, “ The court has no more authority, under the law, to read over testimony to the jury, affecting the life or liberty of the defendant, in his absence, than it has to examine the witnesses in relation thereto, in "his absence. The defendant has not only the right to be confronted with his witnesses, but he has also the right to be present, and see and hear all the proceedings which are had against him on the trial before the court. It is said, the presumption must be, that the court read the testimony correctly, and read over all that was declared against the defendant; therefore he was not injured. The answer is, it was the legal right and privilege of the defendant, to have been present in court, when this proceeding was had before the jury, in relation to the testimony delivered against him; and he is to be *666 considered as standing upon all his legal rights, waiving _ none of them.
These are citations sufficient to show the strict adherence to the rule in all trials where the life and liberty of the accused is in jeopardy. The law is made for the protection of the citizen, and all are alike amenable to its penalties and entitled to its immunities. Whatever may be the turpitude of his offence, however-great his criminality, every man has a right to an impartial trial according to law, and, till found guilty by his peers, that law presumes him innocent; and gives him the right to be present, to see and know all that is said or done by the court affecting his case. Trom reason and authority it seems to be clear, that the court erred in permitting any part of the testimony taken down to be read over to the jury in the absence of the accused.
The third ground of error alleged in the petition of the prisoner, is the admission of statements of the deceased as dying declarations. The law controlling the admission of this species of evidence is well settled. The only difficulty arises in its application to the facts of a particular case. So diverse are these facts, and so varied in all the circumstances attending each case, that embarrassment often arises in the proper application of the law to the facts shown to exist. The apparent conflict in the determinations on this point, pro ceed mainly from the imperfect understanding of these attending circumstances. It is difficult often to present them fully and correctly in a record of the case. Much, in every trial, must be left to judicial discretion, and the presumptions must be in favor of a right exercise of such discretion by the court. Tet, in the haste and excitement of a trial, errors may, and do occur, calling for correction by an appellate tribunal.
These dying declarations are an anomaly in the reception of evidence, and are only admissible where all *667 hope, not only of ultimate recovery, but of a prolonged continuance of life, has left the mind of the person making them. In Rex v. Hayward, 6 Car. & Payne R. 157, chief justice Tindalthus expresses the rule: “Any hope of recovery, however slight, existing in the mind of the deceased at the time the declaration is made, would undoubtedly render the evidence of such declarations inadmissible.” See, also, 1 Wharton’s Am. Crim. Law, § 671. In Bull’s case, 14 Gratt. 620, it is thus laid down: “The rule of law is now well settled, that to render dying declarations admissible evidence, they must be shown to have been made when the declarant is under a sense of impending- death, and without any expectation or hope of recovery.”
In the evidence disclosed in this record, there is much which would bring these declarations of the deceased within the rule as above laid down. He seemed impressed with the belief, that he must soon die of the wound inflicted upon him. He generally so expressed himself. In preparation for death, he made his will; yet, after these declarations were made, he used an expression as to himself, which seemed to indicate, that all hope of recovery was not gone from his mind. When told by an attendant that he had had “ a good nap,” he replied, “yes,” “who knows but I may get well.” This certainly implies the existence in his mind of a possibility, if not a probability, of recovery. It would seem that at that time he was not “without any expectation or hope of recovery.” Prom all the attendant circumstances of this case, as presented in the record, the conclusion reached is, that these declarations were inadmissible.
The fifth ground of error alleged in'the petition of the prisoner is, that the court erred in its refusal to ad. mit the testimony of the witness Dillon, respecting the statement of the deceased to him. This will be more clearly presented by quoting from the testimony. On *668 page 99, the witness says: “ Just about then, very unexpectedly to me, he 3nade a remark, in which were these words: “I did not know he had cut me,” and had coupled with these words the word “ when,” or “ where;” I am more inclined to think he said when; thus, “ I did not know when he had cut me.” With some earnestness on my part I interposed and stopped him; I told him I did not expect him to make a statement, nor did I wish him. I inferred from his manner that he intended to give me a statement of the affair, and I did not wish to hear it. I think he had given a complete sentence.”
In the way this sentence, or part of one, was uttered by the deceased, it plainly presents a portion, and probably only a very small portion, of the facts designed to be communicated when uttered. There is not from the record the slightest reason to conclude that, as it stands, this expression was intended to be the whole truth respecting the circumstances of the death of the deceased, or any considerable portion of them. Were it certain even the sentence was completed, it was manifestly only the commencement of a narrative, which was interrupted. The witness is not certain as to the expression itself. Whether the deceased said when, or where, may be important. The impropriety of the admission of this testimony would seem to be settled by adjudications of this State.
In Vass’s case, 3 Gratt. 864, the court say: “ If facts be stated, which are obviously designed by the party who states them to be connected with other facts which he is about to disclose, and to be qualified by them, so that the narration should form an entire and complete history of the whole transaction, and before the purposed disclosure is made it be interrupted, and the narrative remains unfinished, such particular declaration would not be admissible.” See, also, Finn’s case, 5 Rand. 701.
*669 From these adjudications upon the point, and from principle, the rejection of this testimony by the court on the trial must he held correct, and that the testimony ought not to have been received.
The other grounds of alleged error in the petition of the prisoner are not held to be well taken, and the action of the court below upon them must be sustained. "We do not intend, however, to decide that the law of self-defence, as declared by the court, is so full as to embrace all the law in reference to this point. But as a new trial will be ordered, it is deemed unnecessary to dwell longer upon it.
The judgment of the court must be reversed, and a new trial ordered.
The other judges concurred in reversing the judgment.
Judgment reversed.